## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
JOHN LEONE, JOHN GILLESPIE,    :    Civ. A. No. 08-1043 (NLH)(JS)
TIMOTHY PARKS and              :
BRIAN GREEN,                   :
                               :
        Plaintiffs,            :
                               :
     v.                        :    OPINION
                               :
TOWNSHIP OF DEPTFORD,          :
JOHN MAROLT, DANIEL MURPHY,    :
and JOHN WEATHERBY,            :
                               :
        Defendants.            :
```

**APPEARANCES:**

William H. Buckman, Esquire
110 Marter Avenue
Suite 209
Moorestown, NJ 08057

    *Attorney for plaintiffs*

A. Michael Barker, Esquire
Barker, Scott & Gelfand, PC
Linwood Greene
210 New Road
Suite 12
Linwood, NJ 08221

    *Attorney for defendant Township of Deptford*

Michael Paul Madden, Esquire
Timothy R. Bieg, Esquire
Madden & Madden, PA
108 Kings Highway East
Suite 200
PO Box 210
Haddonfield, NJ 08033-0389

    *Attorney for defendant John Marolt*

Colleen M. Ready, Esquire
Margolis Edelstein
Suite 200
PO Box 2222
Westmont, NJ 08108

*Attorney for defendant Daniel Murphy*

Michael E. Heston, Esquire
Capehart & Scatchard
8000 Midlantic Drive
Suite 300
Mount Laurel, NJ 08054

*Attorney for defendant John Weatherby*

**HILLMAN**, District Judge

This matter has come before the Court on defendant Township of Deptford's and defendant John Weatherby's motions for judgment on the pleadings concerning plaintiffs' allegations of state and federal constitutional violations for incidents surrounding the indictment and prosecution of plaintiffs Gillispie, Parks and Green for an excessive force allegation.[1]  Defendant John Marolt has joined in Township of Deptford's motion.  Plaintiffs have opposed defendants' motions.  For the reasons expressed below, defendants' motions will be granted in part and denied in part.

<u>BACKGROUND</u>

Plaintiffs John Gillespie and Timothy Parks are Deptford Township police officers who were indicted for allegations of excessive force.  Brian Green, also a Deptford Township police officer, was indicted for failing to report or properly supervise the incident.  The alleged incident occurred in February 2006,

---

[1]Defendants have not moved for judgment on the pleadings with regard to plaintiff John Leone's claims.  It appears that defendant Daniel Murphy has not joined in the Township of Deptford's motion or otherwise moved.

2

and these three plaintiffs were suspended without pay in March 2006.  A trial was held with regard to the charges against Gillespie.  Plaintiff John Leone, a Deptford Police Sergeant, testified at Gillespie's trial as an expert witness on the use of force.  Gillespie was acquitted on July 13, 2007, and the charges against Parks and Green were subsequently dismissed.

Plaintiffs claim that the criminal charges against them were "bogus" and lacking in probable cause.  They further claim that when Leone informed the police department that he was going to testify at Gillespie's trial as an expert on the use of force, defendants Marolt, Murphy and Weatherby threatened Leone's career.  Plaintiffs claim that the harassment of Leone became so severe that following an incident between Leone and Murphy on June 6, 2007, Leone provided a statement to Gillespie's attorney, who in turn reported the conduct to the court hearing the charges against Gillespie.  On June 11, 2007, based on Leone's statement, Gillespie signed criminal complaints against Murphy for official misconduct and witness tampering, and against Weatherby for official misconduct.  According to plaintiffs' complaint, on June 13, 2007 the state trial judge admonished defendants and ordered them to cease tampering with witnesses.

Plaintiffs claim that they were treated differently from Weatherby and Murphy because they were not put on leave without pay when criminal complaints were filed against them.  They also

3

claim that their ability to assert a defense was hindered due to defendants' conduct.  Plaintiffs further contend that even after Gillespie was acquitted and the charges against Parks and Green were dismissed, there was an impermissible delay in restating them to the force.  This demonstrates, plaintiffs claim, that the Deptford Township police department fostered an environment of a favored "A team" and disfavored "B team."

Based on these allegations, plaintiffs Gillespie, Parks and Green claim that their constitutional rights were violated. Specifically, plaintiffs[2] allege that they were maliciously prosecuted in violation of their First and Fourth Amendment rights, denied due process in violation of their Fourteenth Amendment rights, denied access to a fair trial, the courts and counsel in violation of their Sixth Amendment rights, and their equal protection rights were violated.[3]  Gillespie also contends that he was retaliated against in violation of his rights as a "whistle blower" under the Contentious Employee Protection Act (CEPA).  Defendants have moved for judgment in their favor on

_____

[2]For the purposes of this Opinion addressing defendants' motion for judgment on the pleadings with regard to plaintiffs Gillespie, Parks and Green, the Court will refer to these three plaintiffs collectively as "plaintiffs."  The Court reiterates that defendants have not directed their motion as to any of plaintiff Leone's claims.

[3]Plaintiffs also assert a "failure to supervise/deliberate indifference" claim against Deptford Township and John Marolt. (Compl. Count Two.)  Defendants have not moved for judgment in their favor on this claim.

these claims.

## DISCUSSION

**A.   Jurisdiction**

Plaintiffs have brought their claims pursuant to 42 U.S.C. §
1983, as well as pursuant to the New Jersey constitution and New
Jersey state law.  This Court has jurisdiction over plaintiffs'
federal claims under 28 U.S.C. § 1331, and supplemental
jurisdiction over plaintiffs' state law claims under 28 U.S.C. §
1367.

**B.   Standard for Judgment on the Pleadings**

A Rule 12(c) motion for judgment on the pleadings may be
filed after the pleadings are closed.  Fed. R. Civ. P. 12(c);
Turbe v. Gov't of V.I., 938 F.2d 427, 428 (3d Cir. 1991).  In
analyzing a Rule 12(c) motion, a court applies the same legal
standards as applicable to a motion filed pursuant to Rule
12(b)(6).  Turbe, 938 F.2d at 428.  Thus, a court must accept all
well-pleaded allegations in the complaint as true and view them
in the light most favorable to the plaintiff.  Evancho v.
Fisher, 423 F.3d 347, 351 (3d Cir. 2005).

A district court, in weighing a motion to dismiss, asks
"'not whether a plaintiff will ultimately prevail but whether the
claimant is entitled to offer evidence to support the claim.'"
Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007)
(quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also

Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element"). A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997).   The defendant bears the burden of showing that no claim has been presented.  Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

**C.   Analysis**

   **1.   *Plaintiffs' constitutional violation claims***

   Plaintiffs have asserted numerous claims, pursuant to 42 U.S.C. § 1983, for violations of their federal constitutional rights.[4]  Each will be addressed in turn.[5]

---

   [4]Plaintiffs appear to advance the same claims under the New Jersey state constitution, although they do not delineate the specific provisions of the state constitution which they claim defendants violated.  The sole allegation is, "Defendants aforesaid violated Plaintiffs' Gillespie, Parks and Green's rights pursuant to the Constitution of New Jersey as reflected in

Count One."  (Compl. Count Four.)  To the extent that plaintiffs'
federal claims are recognized under the state constitution, even
though "the New Jersey Constitution is not a mirror image of the
United States Constitution," <u>Barone v. Department of Human
Services</u>, 526 A.2d 1055, 1062 (N.J. 1987), no separate analysis
will be undertaken because plaintiffs have failed to identify
which provisions of the state constitution defendants allegedly
violated, and they have failed to indicate whether those
provisions, if identified, would afford different or greater
protection.  Therefore, plaintiffs' state constitutional
violation claims will be dismissed without prejudice to
plaintiffs' right to restate those claims if (1) the state
constitution affords more or different protection than the
federal constitution, and (2) the claims are repleaded in
accordance with Fed. R. Civ. P. 8(a) and 11.

[5]For the most part, plaintiffs allege their constitutional
violation claims against defendants collectively.  It must be
noted that the Township defendant can be found liable under §
1983 only where the municipality itself causes the constitutional
violation at issue--*respondeat superior* or vicarious liability
will not attach under § 1983.  <u>Monell v. New York City Dept. of
Social Services</u>, 436 U.S. 658 (1978).  "It is only when the
'execution of the government's policy or custom . . . inflicts
the injury' that the municipality may be held liable under §
1983." <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 385 (1989)
(citations omitted).  With regard to the individual defendants,
whether they are liable for plaintiffs' constitutional violation
claims depends on whether plaintiffs have sued them in their
individual capacity, <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991)
(stating that a claim against a state or local official in his
official capacity is actually a claim against the governmental
entity), and whether defendants are entitled to qualified
immunity, <u>Pearson v. Callahan</u>, 129 S. Ct. 808, 815 (2009); <u>Harlow
v. Fitzgerald</u>, 457 U.S. 800, 818 (1982) (stating that the
doctrine of qualified immunity protects government officials
"from liability for civil damages insofar as their conduct does
not violate clearly established statutory or constitutional
rights of which a reasonable person would have known").  Because
the Court has found that none of plaintiffs' constitutional
violations can withstand defendants' Rule 12(c) motion, these
issues do not need to be addressed.

### a.   Malicious prosecution

Even though it is not expressly pleaded in their complaint, plaintiffs appear to claim that they faced malicious prosecution in violation of both their First and Fourth Amendment rights. With regard to their First Amendment claim, plaintiffs allege that they were "denied their right of association and expression," (Compl. ¶ 71) and that they were retaliated against "by virtue of the fact that it was perceived that they were not supporters of a particular administration of the PD," and that they were "slated for harassment or termination by any means possible including the use of bogus criminal charges and administrative charges to effect their termination" (Comp. ¶ 68). Based on these allegations, plaintiffs' opposition brief maintains that they may assert a "cause of action where an officer attempts to punish an individual for the exercise of First Amendment rights by filing a criminal charge against him." (Pl. Opp. Br. at 6.)

To support this proposition, plaintiffs cite to Mozzochi v. Borden, 959 F.2d 1174, 1180 (2d Cir. 1992).  That case does essentially support plaintiffs' contention, but it is inapplicable here.  The Mozzochi case concerned whether a criminal prosecution based on an exercise of free speech (i.e., being charged with making a threatening communication by mailing a disturbing newspaper article) was an attempt to deter or

8

silence the exercise by the criminal defendant of his right to free speech.[6]  Here, plaintiffs were charged criminally for allegations of excessive force based on an alleged victim's claims--they were not charged with crimes relating to their expression of dissatisfaction of the police department administration.  Thus, defendants are entitled to judgment on this claim.[7]

---

[6]Despite plaintiffs' citation to a Second Circuit case, this Circuit recognizes the same cause of action if appropriate. Palma v. Atlantic County, 53 F. Supp. 2d 743, 752 (D.N.J. 1999) (citing Losch v. Borough of Parkesburg, 736 F.2d 903, 907-08 (3d Cir. 1984) (other citations omitted) "[I]nstitution of [a] criminal action to penalize [or in retaliation for] the exercise of one's First Amendment rights is a deprivation cognizable under § 1983.").

[7]It does not appear from plaintiffs' complaint that they are alleging a First Amendment violation that is not premised on retaliation, because no allegations state a cause of action for such a violation.  See Curinga v. City of Clairton, 357 F.3d 305, 310 (3d Cir. 2004) (stating that in order for a public employee to maintain a First Amendment claim, he must demonstrate that (1) the speech involves a matter of public concern and the employee's interest in the speech outweighs the government employer's countervailing interest in providing efficient and effective services to the public; (2) the speech must have been a substantial or motivating factor in the alleged retaliatory action; and (3) the employer would not have taken the adverse action but for the protected conduct); see also Engquist v. Oregon Dept. of Agr., 128 S. Ct. 2146, 2152 (2008) (discussing past Supreme Court precedent and explaining that the "First Amendment protects public-employee speech only when it falls within the core of First Amendment protection--[i.e.,] speech on matters of public concern--and when employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices; absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's

Plaintiffs' malicious prosecution claims are more-appropriately advanced pursuant to the Fourth Amendment.  To prove malicious prosecution under § 1983 when the claim is under the Fourth Amendment, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.  Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)).  Defendants argue that they are entitled to judgment in their favor because plaintiffs cannot prove several elements of a malicious prosecution claim.  Plaintiffs counter that they have pleaded sufficient facts of every element to withstand defendants' motions.

The Court finds that with regard to the third element--whether the defendant initiated the proceeding without probable cause--plaintiffs have failed to assert the required allegations. In § 1983 actions, "a grand jury indictment or presentment constitutes prima facie evidence of probable cause to prosecute."

_____

behavior").

10

Palma v. Atlantic County, 53 F. Supp. 2d 743, 756 (D.N.J. 1999)
(citing Rose v. Bartle, 871 F.2d 331, 353 (3d Cir. 1989)).  Only
a showing that the "presentment was procured by fraud, perjury or
other corrupt means" can override the presumption of probable
cause.  Id.  Here, plaintiffs have not alleged that the
presentment to the grand jury of the evidence to support the
criminal indictments relating to the excessive force incident was
corrupt.  Thus, by failing to properly allege a necessary element
of a Fourth Amendment malicious prosecution claim, plaintiffs
have failed to state such a claim, and it will be dismissed.

     Third Circuit precedent, however, "supports the notion that
in civil rights cases district courts must offer
amendment--irrespective of whether it is requested--when
dismissing a case for failure to state a claim unless doing so
would be inequitable or futile."  Fletcher-Harlee Corp. v. Pote
Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007).
Accordingly, because it does not appear that allowing plaintiffs
to amend their complaint would be inequitable or futile at this
stage in the case, the Court will grant plaintiffs leave to amend
their complaint with regard to their Fourth Amendment malicious
prosecution claim, if they so desire, and only if they can do so
consistent with this opinion and in compliance with Federal Civil
Procedure Rule 11.

     **b.   Due process in violation of the Fourteenth**

**Amendment**

Plaintiffs claim that their procedural due process rights were violated when defendants tampered with witnesses, caused Leone and other witnesses to alter or withdraw their testimony so as to deprive them of exculpatory evidence, created an atmosphere that prevented witnesses from testifying on behalf of plaintiffs, and, overall, infringed upon defendants' right to present their defense.[8]  Defendants have moved for judgment in their favor on this claim, arguing that plaintiffs did not experience such deprivation.

The Supreme Court has recognized that a constitutional right to effectively use the courts has been found in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses. Gibson v. Superintendent of NJ Dept. of Law and Public Safety-Division of State Police, 411 F.3d 427, 441 (3d Cir. 2005) (citing Christopher v. Harbury, 536 U.S. 403, 415 n.12 (2002)). Asserting this right, wherever it is grounded, a plaintiff can

---

[8]Plaintiffs' opposition brief makes clear that plaintiffs are not asserting a due process claim with regard to their allegation that even after Gillespie was acquitted and the charges against Parks and Green were dismissed, there was an impermissible delay in restating them to the force.  It appears that this allegation is asserted to support their equal protection claim.

seek relief for "loss or inadequate settlement of a meritorious case, . . . the loss of an opportunity to sue, . . . or the loss of an opportunity to seek some particular order of relief." Id. (citing Christopher, 536 U.S. at 414).

Plaintiffs appear to advance this cause of action pursuant to the Fourteenth Amendment for defendants' interference with exculpatory evidence.  Police officers and other state actors may be liable under § 1983 for due process violations for failure to provide or otherwise tamper with exculpatory evidence. See id. (holding that "it would be anomalous to say that police officers are not liable when they affirmatively conceal material evidence from the prosecutor," by extending Brady v. Maryland, 373 U.S. 83, 87 (1963), which held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment).  "The mere failure of a police officer, however, to disclose exculpatory or impeachment evidence to the prosecutor does not itself constitute a violation of the Due Process Clause." Gagliardi v. Fisher, 513 F. Supp. 2d 457, 490 (W.D. Pa. 2007) (citing Smith v. Holtz, 210 F.3d 186, 196 (3d Cir. 2000)). No Brady violation can occur unless the undisclosed evidence is "material" for purposes of the Brady inquiry. Id. (citing Albrecht v. Horn, 471 F.3d 435, 460 (3d Cir. 2006)).  When a denial of access claim involves a state's suppression of evidence

13

that is material to a criminal trial, the claim does not accrue until the conviction is invalidated.  See <u>Smith</u>, 87 F.3d at 112.

Plaintiffs cannot maintain their due process claims for their allegations of defendants' interference with exculpatory evidence for several reasons.  First, with regard to Parks and Green, all charges were dropped against them, and their case never proceeded to trial.  They have no injury, and therefore, no standing to bring a due process claim based on defendants' alleged interference with evidence material to their cases.  <u>See</u> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992) (stating that in order to establish an injury in fact, a plaintiff must have suffered an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical).

Second, with regard to Gillespie, he has not identified what exculpatory evidence was withheld from his trial.  He has not alleged how witnesses altered or withdrew their testimony so as to deprive him of exculpatory evidence, or what witnesses refused to testify on his behalf.  Further, the one witness identified by Gillespie, fellow plaintiff Leone, actually testified at his trial, and Gillespie has not alleged how Leone's testimony was affected by defendants' alleged tampering.  Without identifying what evidence was interfered with, a determination cannot be made whether it was material to his case.

14

Even if Gillespie did make such allegations, his claim would still fail, however, because he was acquitted.  It is axiomatic that a finding in Gillespie's favor demonstrates that he received the process he was due.  Thus, as with Parks and Green, Gillespie has no injury as a result of defendants' alleged evidence tampering.[9]  See, e.g., Gagliardi, 513 F. Supp. 2d at 491 (W.D. Pa. 2007) (finding no Brady violation because the facts alleged by plaintiff show that he was never convicted, and consequently, he cannot claim that the "evidence" was material to his guilt or punishment, citing United States v. Wirtz, 357 F. Supp. 2d 1164, 1171 (D. Minn. 2005) ("Because of the acquittal, the alleged Brady violation did not occur... ."));  see also Gibson, 411 F.3d at 442 (quoting Christopher, 536 U.S. at 415)("[T]he underlying cause of action, whether anticipated or lost, is an element that must be described in the Complaint, just as much as allegations must describe the official acts frustrating the litigation.  It follows, too, that when the access claim . . .  looks backward, the Complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought.").  Accordingly, defendants are entitled to judgment in their favor on plaintiffs' Fourteenth Amendment due process

_____

[9]For the injury of having to unnecessarily go through the legal process, a claim for malicious prosecution may be advanced. Here, however, as discussed above, plaintiffs have not adequately pleaded a successful malicious prosecution claim.

15

claims.

### c.    Violation of the Sixth Amendment

Plaintiffs have also asserted that defendants violated their Sixth Amendment right to counsel, in that defendants hindered their ability to prepare for trial and call witnesses.  The Sixth Amendment to the United States Constitution provides the accused in a criminal prosecution the right to offer the testimony of favorable witnesses and "to have compulsory process for obtaining witnesses in his favor."  U.S. Const. Amend. VI.  The Supreme Court has extended the Compulsory Process clause to cover a criminal defendant's right to present witnesses or evidence in his defense, "even though [such a right] is not expressly described in so many words."  Government of Virgin Islands v. Mills, 956 F.2d 443, 445 (3d Cir. 1992) (quoting Taylor v. Illinois, 484 U.S. 400, 409 (1988)).  In order to prove a Sixth Amendment right to compulsory process, a plaintiff must show: (1) that he was deprived of the opportunity to present evidence in his favor; (2) that the excluded testimony would have been material and favorable to his defense; and (3) that the deprivation was arbitrary or disproportionate to any legitimate evidentiary or procedural purpose.  Id. (citing Rock v. Arkansas, 483 U.S. 44, 56 (1987)).  "There is apparently little, if any, difference in the analysis" between a claim brought pursuant to

16

the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment.  Id. at 446 n.4.  Accordingly, plaintiffs' Sixth Amendment claims fail for the same reasons as their Fourteenth Amendment claims.

### d.   Violation of plaintiffs' Equal Protection rights

Plaintiffs claim that their equal protection rights were violated when they were treated differently from the similarly-situated defendants.  Specifically, plaintiffs claim that when they were suspended without pay after they were charged with indictable criminal complaints, but Murphy and Weatherby were not similarly suspended when Gillespie filed indictable criminal complaints against them.  Plaintiffs claim that this was done intentionally because of the "A-team" versus "B-team" mentality of the force, and it had no rational basis.  Defendants argue that they are entitled to judgment on this claim not only because plaintiffs and defendants were not similarly situated, but also because plaintiffs are barred from bringing such a claim.

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (citations and quotations omitted).  Equal protection claims can be brought by a

17

"class of one," where the plaintiff alleges that he has been
intentionally treated differently from others similarly situated
and that there is no rational basis for the difference in
treatment.  Id.  To state a claim under this theory, a plaintiff
must allege that (1) the defendant treated him differently from
others similarly situated, (2) the defendant did so
intentionally, and (3) there was no rational basis for the
difference in treatment.  Hill v. Borough of Kutztown, 455 F.3d
225, 239 (3d Cir. 2006).

    This "class-of-one" claim, however, cannot be asserted by a
public employee.  Engquist v. Oregon Dept. of Agr., 128 S. Ct.
2146, 2157 (2008) (finding that "ratifying a class-of-one theory
of equal protection in the context of public employment would
impermissibly constitutionalize the employee grievance, . . .
[and] [p]ublic employees typically have a variety of protections
from just the sort of personnel actions[,] . . . but the Equal
Protection Clause is not one of them").  Consequently, because
plaintiffs are public employees, their equal protection claim
must be dismissed.

        e.    Gillespie's CEPA claim

    Gillespie contends that defendants violated the
Conscientious Employee Protection Act when, "[a]s a result of
[his] disclosures, complaints, and official actions regarding
[violations of law and policy], . . . Gillespie [was] wrongfully

                              18

punished and subjected to retaliation." (Compl. ¶ 85.)
Defendants move for judgment in their favor on this claim,
arguing that Gillespie cannot show that an adverse employment
action was taken against him, and he cannot show any causal
connection between protected activity and adverse employment
action.

The New Jersey Legislature enacted the Conscientious
Employee Protection Act to "protect and encourage employees to
report illegal or unethical workplace activities and to
discourage public and private sector employers from engaging in
such conduct." Dzwonar v. McDevitt, 828 A.2d 893, 900 (N.J.
2003) (internal citation and quotation omitted). CEPA provides,

> An employer shall not take any retaliatory action
> against an employee because the employee does any of
> the following:
>
> > a. Discloses, or threatens to disclose to a
> > supervisor or to a public body an activity, policy
> > or practice of the employer . . . that the
> > employee reasonably believes is in violation of a
> > law, or a rule or regulation promulgated pursuant
> > to law . . . ; or . . .
> >
> > c. Objects to, or refuses to participate in any
> > activity, policy or practice which the employee
> > reasonably believes:
> >
> > > (1) is in violation of a law, or a rule
> > > or regulation promulgated pursuant to
> > > law or, if the employee is a licensed or
> > > certified health care professional,
> > > constitutes improper quality of patient
> > > care;
> > >
> > > (2) is fraudulent or criminal; or

19

>           (3) is incompatible with a clear mandate
>           of public policy concerning the public
>           health, safety or welfare or protection
>           of the environment.

N.J. Stat. Ann. § 34:19-3.

In order to prevail on a claim under CEPA, a plaintiff must demonstrate: 1) he reasonably believed that his employer's conduct was violating a law, rule, or regulation promulgated pursuant to law; 2) he performed a whistle-blowing activity described in N.J. Stat. Ann. § 34:19-3(c); 3) an adverse employment action was taken against him; and 4) a causal connection exists between the whistle-blowing activity and the adverse employment action.  Dzwonar, 828 A.2d at 900 (citations omitted).

It appears from the complaint that Gillespie contends that his adverse employment action was "concocted bogus administrative charges" following his acquittal on July 13, 2007.  (Compl. ¶ 58.)  These administrative charges appear to be a four-day suspension.  (Id. ¶ 52.)  It also appears that Gillespie claims that this adverse employment action was taken because he filed criminal complaints on June 11, 2007 against Marolt, Murphy and Weatherby for their conduct in tampering with evidence he needed to present at his trial.

Defendants do not argue that Gillespie has not pleaded the

20

first two elements of his CEPA claim.  Instead, they argue that
the events giving rise to the administrative charges occurred
prior to June 11, 2007, and, therefore, his suspension was not
caused by his alleged whistle-blowing activity.  Defendants also
argue that administrative investigations and suspensions are not
adverse employment actions.

With regard to the timing issue, Gillespie claims he was
placed on a four-day suspension after he filed criminal
complaints against defendants.  In response, defendants present
caselaw which provides that when an employer has already begun
transfer or termination proceedings prior to the whistle-blowing
activity, there can be no inference of causation.  See Clark
County School District v. Breeden, 532 U.S. 268 (2001);
Windfelder v. May Dept. Stores, 93 Fed. Appx. 351 (3d Cir. 2004).
By analogy, defendants argue that the events giving rise to
Gillespie's suspension occurred in February 2006, which was well
before Gillespie's alleged whistle-blowing activity in June 2007,
and that his suspension following his July 2007 acquittal was
simply the carrying out of the predetermined, pre-June 2007
administrative penalty.  Whether this is the situation here,
however, cannot be determined from plaintiffs' complaint, which
may only be considered when deciding a Rule 12(c) motion.  Thus,
even though this timing issue may later be challenged, Gillespie
has sufficiently pleaded causation to withstand defendants'

motion.

With regard to whether his four-day suspension was an adverse employment action, suspensions without pay are considered a adverse employment actions. <u>Beasley v. Passaic County</u>, 873 A.2d 673, 685 (N.J. Super. App. Div. 2005). Thus, on the face of Gillespie's complaint, he has stated a CEPA claim.[10] <u>See Bell Atlantic v. Twombly</u>, 127 S. Ct. 1955, 1969 n.8 (2007) (stating that a district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim'").

**CONCLUSION**

---

[10]It is important to note that New Jersey statute provides,

[W]henever any municipal police officer is charged under the law of this State . . . with an offense, said police officer may be suspended from performing his duties, with pay, until the case against said officer is disposed of at trial, until the complaint is dismissed, or until the prosecution is terminated; provided, however, that if a grand jury returns an indictment against said officer, or said officer is charged with an offense which is a high misdemeanor or which involves moral turpitude or dishonesty, said officer may be suspended from his duties, without pay, until the case against him is disposed of at trial, until the complaint is dismissed or until the prosecution is terminated.

N.J.S.A. 40A:14-149.1.

It is not clear whether this statute served as the basis for Gillespie's suspension; however, if it was, Gillespie's CEPA claim would appear to fail because it would negate the causation element.

22

For the reasons expressed above, judgment on the pleadings shall be entered in favor of defendants Township of Deptford, John Marolt, John Weatherby, and Daniel Murphy[11] on Counts One and Four in plaintiffs John Gillespie, Timothy Parks, and Brian Green's complaint.  Defendants' motions are denied with regard to plaintiff John Gillespie's CEPA claim, Count Three.[12]   An appropriate Order will be entered.


Date: April 29, 2009                    ___s/ Noel L. Hillman___
At Camden, New Jersey                   NOEL L. HILLMAN, U.S.D.J.

---

[11]Even though defendant Daniel Murphy did not join in on defendants' motions or independently move for dismissal of the claims against him, he is entitled to judgment in his favor as to Counts I and IV for the same reasons as the other defendants. Bryson v. Brand Insulations, Inc., 621 F.2d 556, 559 (3d Cir. 1980) (stating that a "district court may on its own initiative enter an order dismissing the action provided that the complaint affords a sufficient basis for the court's action").

[12]As a result of this Opinion, the claims that remain are Count Two (asserted by all plaintiffs), Count Three (asserted by plaintiffs Leone and Gillespie), and Counts Five and Six (asserted by plaintiff Leone).

23